IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| SECUREMED CORPORATION,<br><br>    Plaintiff,<br><br>vs.<br><br>STANDARD SECURITY LIFE<br>INSURANCE COMPANY OF<br>NEW YORK,<br><br>    Defendant. | No. CV 05-418-TUC-CKJ<br><br>**ORDER** |

    Pending before the Court is Plaintiff's Motion for Summary Judgment. Defendant has filed a Response and Plaintiff has filed a Reply. Oral argument was presented to the Court on February 2, 2006.

I. *Background*[1]

    Plaintiff SecureMed Corp. ("SecureMed") offers computer software for use with medical office accounting, medical office appointment scheduling, billing, electronic health insurance claim submission services, maintaining patient records, and computer consulting services. SecureMed is not licensed to sell insurance policies. SecureMed registered the

---

[1] Unless otherwise stated, the facts are taken from Defendant's statement of facts. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986) (evidence of the nonmoving party is to be believed).

SECUREMED® mark with the United States Patent and Trademark Office ("USPTO").[2] This mark is classified as "computer, science & legal."

Defendant Standard Security Life Insurance Co. of New York ("Standard") is an insurance company that offers excess, life and health insurance policies. Standard is not in the business of offering computer software design services or electronic health insurance claim submission services. In early 2005, Standard adopted the Secure Med STM mark for its short-term health medical insurance product.

The USPTO allowed SecureMed to register its mark even though there is a prior registration for MEDSECURE® in the same classification.

On June 28, 2005, SecureMed filed a Complaint alleging trademark/service mark infringement; unfair competition and trademark/service mark dilution under the Lanham Act, and; unfair competition and trademark infringement under Arizona common law.

On November 10, 2005, SecureMed filed its Motion for Summary Judgment. On December 13, 2005, SecureMed filed a Notice that Standard did not file a timely Response and reserved the right to move to strike as late and dilatory any Response. On December 15, 2005, Standard filed a Response. On December 23, 2005, SecureMed filed a Reply. The Court notes that SecureMed has attached to its Reply apparent pages from web searches apparently showing that searches result in "SecureMed" appearing for the Standard product. However, SecureMed has not provided any affidavit to establish that is what these documents are.

At the hearing on the Motion for Summary Judgment, counsel for SecureMed submitted an exhibit. No foundation has been submitted with this exhibit.

II. *Summary Judgment Legal Standard*

Summary judgment may be granted if the movant shows "there is no genuine issue

---

[2]SecureMed asserts (in their Reply, but not in an affidavit or other form of evidence) that its mark is SecureMed®.

- 2 -

1  as to any material fact and that the moving party is entitled to judgment as a matter of law."
2  Rule 56(c), Federal Rules of Civil Procedure.  A moving party must identify "those portions
3  of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together
4  with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of
5  material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91
6  L.Ed.2d 265 (1986), *quoting* Rule 56, Fed.R.Civ.P.  Moreover, the Local Rules for this
7  district requires that the motion for summary judgment be accompanied by a separate
8  statement of "specific facts on which that party relies in support of the motion."  Rule
9  56.1(a), L.R.Civ.P.  Where the moving party bears the burden of proof at trial on the issues
10 raised in the summary judgment motion, its showing must be sufficient for the court to find
11 that no reasonable trier of fact could find other than for the moving party.  *Calderone v.*
12 *United States*, 799 F.2d 254, 259 (6th Cir. 1986), *quoting* W. Schwarzer, *Summary Judgment*
13 *Under the Federal Rules:  Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88
14 (1984).  It is only when the moving party has met its initial burden that the burden shifts to
15 the responding party to produce evidence of specific facts which create a genuine issue for
16 trial.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91
17 L.Ed.2d 202 (1986).  The disputed facts must be material.  *Celotex Corp. v. Catrett*, 477 U.S.
18 317, 322-23, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  Therefore, the nonmoving party
19 must demonstrate a dispute "over facts that might affect the outcome of the suit under the
20 governing law" to preclude entry of summary judgment.  *Anderson*, 477 U.S. at 248, 106 S.
21 Ct. at 2510.

22  The dispute over material facts must also be genuine.  *Id.*  A dispute about a material
23 fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the
24 nonmoving party." *Id.*  A party opposing a properly supported summary judgment motion
25 must set forth specific facts demonstrating a genuine issue for trial. *Id.*  Mere allegation and
26 speculation are not sufficient to create a factual dispute for purposes of summary judgment.
27 *Witherow v. Paff*, 52 F.3d 264, 266 (9th Cir. 1995) (per curiam).  "If the evidence is merely
28 colorable or is not significantly probative, summary judgment may be granted." *Anderson*,

477 U.S. at 249-50, 106 S. Ct. at 2511. However, the evidence of the nonmoving party is to be believed and all justifiable inferences are to be drawn in his favor. *Id.* at 255.

Standard asserts, in its Response, that SecureMed's failure to file a separate statement of facts and/or affidavits or evidence, requires that summary judgment be denied on this basis alone. However, SecureMed asserts that it need not present evidence, but only point out the lack of any genuine dispute as to material fact.

*Celotex* recognized that a moving party would have to point to parts of the file to demonstrate an absence of a genuine issue of material fact. Moreover, the failure to comply with the local procedural requirement makes it difficult to determine that SecureMed has made an adequate showing that no reasonable trier of fact could find for Standard. *Celotex*. A sufficient showing cannot be made without the Court knowing that SecureMed actually has evidence to support its claims. For example, in its Reply, SecureMed asserts that it is undisputed that the parties are simultaneously using the Web as a marketing channel. However, the Court has no evidence before it that SecureMed uses the Web as a marketing channel. The Court cannot say that no reasonable trier of fact could find for Standard without knowing that SecureMed has a witness or alternate evidence that, with adequate foundation, can present this evidence to a trier of fact. Counsel's statement would be insufficient to establish such an evidentiary fact before a jury; similarly, counsel's assertions in pleadings are insufficient to establish such an evidentiary fact for purposes of summary judgment.

III. *Trademark Infringement*

The Ninth Circuit Court of Appeals has stated that a "successful trademark infringement claim under the Lanham Act requires a showing that the claimant holds a protectable mark, and that the alleged infringer's imitating mark is similar enough to 'cause confusion, or to cause mistake, or to deceive.'" *Surfvivor Media*, 406 F.3d 625, 630 (9th Cir. 2005), *quoting KP Permanent Makeup, Inc. v. Lasting Impression I, Inc.*, 125 S.Ct. 542, 547, 160 L.Ed.2d 440 (2004). In this case, there is a material fact in dispute whether SecureMed

- 4 -

1  holds a protectable mark.

2       In determining whether the imitating mark is similar enough to cause confusion, the
3  factfinder must decide "whether a 'reasonably prudent consumer in the marketplace is likely
4  to be confused as to the origin of the good or service bearing one of the marks.'" *Id.*, *citing*
5  *Dreamwerks Production Group v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).  A
6  likelihood of confusion requires a probability rather than simply a possibility.  *HMH*
7  *Publishing Co. v. Brincat*, 504 F.2d 713, 717 (9th Cir. 1974).  There are three primary routes
8  of proof for a plaintiff to establish a likelihood of confusion is probable:  survey evidence,
9  evidence of actual confusion, and/or argument based on a clear inference arising from a
10 comparison of conflicting marks and the context of their use.  3 J.T. McCarthy, *McCarthy*
11 *on Trademarks and Unfair Competition*, § 23:63 (4th ed.).  In this case, SecureMed has made
12 no showing of either survey evidence or actual confusion.

13      The Court, therefore, should compare the conflicting marks and the context of their
14 use. In determining the likelihood of confusion, a court is to consider (1) the strength of the
15 mark(s); (2) the relatedness of the goods; (3) the similarity of the marks; (4) the evidence of
16 actual confusion; (5) the marketing channels used; (6) the degree of consumer care; (7) the
17 defendant's intent in selecting the mark, and; (8) the likelihood of expansion. *Surfvivor*; *see*
18 *also AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).  The Ninth Circuit
19 has cautioned that summary judgment motions regarding the likelihood of confusion should
20 be granted sparingly, "as careful assessment of the pertinent factors that go into determining
21 likelihood of confusion usually requires a full record." *Levi Strauss & Co. v. Blue Bell, Inc.*,
22 778 F.2d 1352, 1356 n.5 (9th Cir. 1985).  Indeed, "the question of likelihood of confusion
23 is routinely submitted for jury determination as a question of fact." *Id.*

24

25 A.  *Strength of the Mark*

26      SecureMed asserts that the mark is unique. *See Entrepreneur Media v. Smith*, 279
27 F.3d 1135, 1141 (9th Cir. 2002) (stronger marks receive greater protection than weak ones).
28 However, Standard has presented evidence that the USPTO registered SecureMed® despite

- 5 -

MedSecure® being already registered in the same classification. Moreover, Standard asserts that "Secure" is used in 2690 trade mark and service mark records according to the USPTO web site. *See Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1179 (9th Cir. 1988) (a weak mark is a mark that is a meaningful word in common usage or is merely a suggestive or descriptive trademark).

B. *Relatedness of the Goods*

The standard for deciding whether the parties' goods or services are related is whether customers are likely to associate the two product lines. *Dreamwerks*, 142 F.3d at 1131, *Surfvivor*, 406 F.3d at 631. SecureMed asserts that both SecureMed and Standard contract with health care providers and that same customer base establishes a high degree of relatedness. However, the products are similar only in the broadest sense: each product is related to medical care providers. The actual products and their intended use reveal significant differences in the two products.

C. *Similarity of the Marks*

SecureMed asserts that the marks are "a dead on, exact match." Motion, p. 5. SecureMed further asserts that the added STM to Standard's mark refers to Short Term Medical and that there is no dispute that Standard's health insurance is named SecureMed. Standard asserts that if there was no likelihood of confusion between SecureMed® and MedSecure® such that the USPTO granted the registration to SecureMed, there is no likelihood of confusion between SecureMed® and Secure Med STM. Moreover, Standard asserts that the SECUREMED® mark is not similar to the Secure Med STM mark. Standard further asserts that the occasional use by agents that omit (1) the space between Secure and Med or (2) the use of STM does not establish the marks are identical. SecureMed has presented information, but not sworn to evidence, that its mark is actually SecureMed® (without the capitalization) and web pages showing Standard's product being referred to as SecureMed (without the space or use of STM).

D. *Evidence of Actual Confusion*

No evidence of actual confusion has been presented. Actual confusion is considered to be "the best evidence of likelihood of confusion." *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 (9th Cir. 1980). Indeed, "an absence of actual confusion, or a negligible amount of it, between two products after a long period of coexistence on the market is highly probative in showing that little likelihood of confusion exists." *Aktiebolaget Electrolux v. Armatron International, Inc.*, 999 F.2d 1, 3 (1st Cir. 1993).

E. *Marketing Channels Used*

SecureMed asserts that there is no dispute that the parties distribute their goods in the same marketing channels. However, Standard asserts that SecureMed markets its products to health care professionals, while Standard markets its products through licensed insurance agents. Standard further asserts that it has presented evidence that it markets to individual patients, small businesses, and registered agents and that SecureMed has not presented any evidence to dispute this.

F. *Degree of Consumer Care*

SecureMed asserts that the "average health care consumer is reasonably prudent when they seek medical services and therefore, would believe a company such as Plaintiff that occupies a space in the health care industry could also offer health insurance or *vice versa*, by the Defendant." Motion, pp. 6-7. Standard asserts, however, that an "unreasonably imprudent consumer would be hard pressed to mistake Defendant's health insurance policies for Plaintiff's Windows® based physician practice manage software integration products." Response, p. 13.

G. *Defendant's Intent*

Standard asserts that it has submitted undisputed evidence that it adopted its Secure Med STM mark without knowledge of SecureMed or its registered mark. SecureMed asserts

that the entire world is on constructive notice of registered U.S. trademarks and, therefore, Standard had constructive notice of the SecureMed mark. SecureMed asserts that Standard's infringement, therefore, is with knowledge. *See Tillamook Country Smoker, Inc. v. Tillamook County Creamery Assoc.*, 333 F.Supp.2d 975, 980 n. 2 (D.Or. 2004) (registered trademark provides constructive notice of registrant's ownership so as to defeat any claim of good faith asserted by other users); *Brookfield Communications v. West Coast Entertainment*, 174 F.3d 1036, 1059 (9th Cir. 1999) (the presence of intent can constitute strong evidence of confusion, but a lack of intent is largely irrelevant in determining if consumers likely will be confused as to the source).

H. *Likelihood of Expansion*

SecureMed asserts that Standard's General Agents are often also in the health plan administration business. However, SecureMed has not provided any evidence to support this assertion. Standard asserts, and supports by affidavit, that it is unaware of any insurance agent that also sells medical practice management software.

I. *Likelihood of Confusion Summary*

The Ninth Circuit has stated that, "[i]n the context of the Web, the three most important *Sleekcraft* factors in evaluating a likelihood of confusion are (1) the similarity of the marks, (2) the relatedness of the goods or services, and (3) the parties simultaneous use of the Web as a marketing channel. When this "controlling troika" or internet trinity suggests confusion is likely, the other facts must weigh strongly against a likelihood of confusion to avoid the finding of infringement." *Interstellar Starship Servies v. Epix, Inc.*, 304 F.3d 936, 942 (9th Cir. 2002). Here, the parties disagree regarding each of these factors. Although these factors support a finding that there is a possibility of a likelihood of confusion, the factors do not support a finding that there is a probability of a likelihood of confusion such that summary judgment in favor of SecureMed would be appropriate. Summary judgment of this claim will be denied.

1  IV. *Trademark Dilution*

2       The Federal Trademark Dilution Act provides a remedy to "dilution of famous
3 marks." 15 U.S.C. § 1125. "Dilution" is defined as "the lessening of the capacity of a
4 famous mark to identify and distinguish goods or services." *Id.* In determining whether a
5 mark is distinctive and famous, a court may consider factors such as, but not limited to:

> (1) the degree of inherent or acquired distinctiveness of the mark;
> (2) the duration and extent of use of the mark in connection with the goods or services with which the mark is used;
> (3) the duration and extent of advertising and publicity of the mark;
> (4) the geographical extent of the trading area in which the mark is used;
> (5) the channels of trade for the goods or services with which the mark is used;
> (6) the degree of recognition of the mark in the trading areas and channels of trade used by the marks' owner and the person against whom the injunction is sought;
> (7) the nature and extent of use of the same or similar marks by third parties; and
> (8) whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

12  15 U.S.C. § 1125(c)(1).

13       Standard asserts that, not only has SecureMed failed to present any evidence of
14 dilution, SecureMed has not carried its burden of establishing that SecureMed® is famous.
15 "Plaintiff is a tiny company with no physical footprint beyond its one office in Tucson and
16 small branch in Phoenix. It employees (sic) only twenty-eight (28) people. It has only used
17 its SECUREMED® mark in commerce since December of 1999. SECUREMED® is
18 inherently a weak, non-distinctive mark. Thousands of other marks employ the common,
19 descriptive words 'SECURE' and 'MED.'" Response, p. 15, *citations omitted.*

20       Relying on a Third Circuit case, SecureMed asserts that it need not show that its mark
21 is famous. The Third Circuit Court of Appeals has stated that "a mark not famous to the
22 general public is nevertheless entitled to protection from dilution where both the plaintiff and
23 defendant are operating in the same or related markets, so long as the plaintiff's mark
24 possesses a high degree of fame in its niche market." *Times Mirror Magazines v. Las Vegas*
25 *Sports News*, 212 F.3d 157, 164 (3rd Cir. 2000); *see also Thane International, Inc. v. Trek*
26 *Bicycle Corp.*, 305 F.3d 894, 908 (9th Cir. 2002) ("[M]arks famous in only a limited
27 geographic area or a specialized market segment can be 'famous' for the purposes of the
28 federal anti-dilution statute." "Niche fame protection is, however, limited" to "when a mark

- 9 -

is famous within a niche market *and* the alleged diluter uses the mark within that niche.").

SecureMed asserts that its co-sponsorship of the U.S. Surgeon General's Annual Conferences in 2003 and 2004 (again, without any supporting evidence/foundation) show that SecureMed's mark possesses a high degree of fame in its niche market. SecureMed further asserts that the Court should consider:

> 1) the sheer number of infringing health insurance policies sold under the SecureMed name, 2) the dozens of states where the policies have been sold, and 3) the proliferation on the internet of Defendant's advertising and Defendant's General Agent's advertising of the SecureMed health insurance policies. This infringement has completely eclipsed Plaintiff's own paid advertising on Google® and Yahoo®. These infringements, collectively by far meet the test for the 'dilution of the mark's distinctive quality' which applies to all marks, including higher protected identical marks, under *Moseley*.

Motion, p. 11, referring to *Moseley v. Victoria Secret Catalog*, 537 U.S. 418, 123 S.Ct. 1115 (2003). However, SecureMed has presented no evidence of these allegations. In *Moseley*, the Court held that, where the marks are not identical, "the mere fact that consumers mentally associate the junior user's mark with a famous mark is not sufficient to establish actionable dilution." 537 U.S. at 419, 123 S.Ct. at 1117. SecureMed assumes the opposite circumstance that identical marks require a determination that the mere mental association is sufficient to establish actionable dilution. Although that may be a possible inference of *Moseley*, the Supreme Court did not make such a holding.

Whether the statutory factors or the Third Circuit test is used, SecureMed has presented no evidence from which the Court can conclude that there is no genuine issue as to the material facts. Indeed, even if the Court relies on the Third Circuit test, SecureMed has made no showing of dilution. Summary judgment on this claim will be denied.

V.  *State Common Law Claims*

SecureMed asserts that the state common law claims are preempted by the federal statutes and summary judgment in its favor on the federal claims requires summary judgment in its favor on the state common law claims. Standard asserts the state common law mirrors the federal law, but is not necessarily preempted by it. Standard asserts that, because

- 10 -

summary judgment on the federal claims is not appropriate, summary judgment should also be denied as to the state common law claims. The Court having determined that denial of summary judgment on the federal claims is appropriate, the Court will deny summary judgment on the state claims.

Accordingly, IT IS ORDERED:

1. SecureMed's Motion for Summary Judgment [Doc. # 12] is DENIED;

2. A **Scheduling Conference** will be held in the above entitled action on **March 16, 2006, at 10:00 a.m.**, with Elizabeth J. Jarecki, law clerk of the Honorable Cindy K. Jorgenson. The conference will be held telephonically and SecureMed's counsel shall initiate the scheduling conference by calling the law clerk at (520) 205-4550 with all parties on the line, and;

3. Counsel shall file with the Court, on or before **March 9, 2006**, a **Joint Report** reflecting the results of their meeting and outlining the discovery plan.[3]

DATED this 7th day of February, 2006.

_____
Cindy K. Jorgenson
United States District Judge

---

[3] As set forth in the October 25, 2005, Order.